The defendant appeals from a District Court judge's extension of an abuse prevention order issued pursuant to G. L. c. 209A. He argues that (1) the judge erred by failing to make factual findings as to the basis of the order, (2) the evidence did not show that the plaintiff was in reasonable fear of imminent serious physical harm, and (3) the judge should not have issued the order because the parties had a pending divorce proceeding in the Probate and Family Court. We affirm the extension of the order.
Background. The plaintiff and the defendant were married but involved in divorce proceedings when the plaintiff (the wife) filed a complaint and affidavit seeking a c. 209A order. The parties continued to live in the same house during the divorce proceedings. The plaintiff's complaint alleged that the defendant had placed her in fear of imminent serious physical harm over a span of seventeen months. She did not check the box on the complaint form indicating the pendency of divorce proceedings, but she referenced them in her attached affidavit. A judge issued an ex parte order. One week later, another judge conducted an evidentiary hearing at which both parties testified; at the close of the hearing, the judge found enough evidence to extend the order for one year.
Discussion. 1. Lack of factual findings. The defendant argues that the judge erred by not explicitly making factual findings on the record to support the extension order. But the defendant points to no statute or case that requires the judge to make such findings, and this court has not required specific findings of fact in these cases. See, e.g., Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 140 n.3 (2006). "Indeed, where we are able to discern a reasonable basis for the order in the judge's rulings and order, no specific findings are required." G.B. v. C.A., 94 Mass. App. Ct. 389, 396 (2018).
Here, the judge clearly credited the plaintiff's affidavit and testimony and, at the close of the hearing, "f[ound] enough evidence to continue this for one year." And, as discussed next, "we are able to discern a reasonable basis for the [extension] order." Id. No more was required.
2. Fear of imminent serious physical harm. There was ample evidence that since at least August, 2016, the parties' relationship had been deteriorating. It was characterized not merely by the defendant's hostile statements, but also by his aggressive physical conduct aimed at the plaintiff and her belongings. The defendant's behavior caused the plaintiff both to fear for her physical safety and to take steps to protect herself. His actions had escalated in the months before she sought the c. 209A order, and at the hearing the plaintiff testified to being "presently in fear that he would cause [her] physical harm."
The defendant asserts that the judge erred or abused his discretion by extending the order, because the plaintiff's evidence did not show that her fear was reasonable. We are not persuaded. Typically, a plaintiff must show by a preponderance of the evidence that she has a reasonable fear of imminent serious physical harm. Iamele v. Asselin, 444 Mass. 734, 739-740 & n.3 (2005). "In evaluating whether a plaintiff has met her burden, a judge must consider the totality of the circumstances of the parties' relationship." Id. at 740. By extending the order, the judge implicitly found that the plaintiff did have such a reasonable fear, and we review that implicit finding for clear error. See Diaz v. Gomez, 82 Mass. App. Ct. 55, 62 (2012). Cf. DeMayo v. Quinn, 87 Mass. App. Ct. 115, 116-117 (2015) (finding that sufficient "harassment" occurred to warrant issuance of G. L. c. 258E order reviewed for clear error).
In light of the defendant's conduct and the hostile relationship between the parties, the judge could find that the plaintiff's fear of abuse was reasonable. See C.R.S. v. J.M.S., 92 Mass. App. Ct. 561, 563 (2017), citing Pike v. Maguire, 47 Mass. App. Ct. 929, 930 (1999). The plaintiff outlined the following instances of the defendant's threatening actions from mid-2016 to the day that she applied for the restraining order in December, 2017.
In August, 2016, the plaintiff relocated to an extra bedroom and locked the door "in fear [the defendant] would come after [her]." In September, 2016, the defendant destroyed all of the plaintiff's bathroom toiletries.[2] The defendant then tried to intimidate and "corner" the plaintiff, leading her to videotape him regularly. One night in January, 2017, when the defendant had been drinking heavily, the plaintiff went into another room and locked the door "because [she] was afraid," but the defendant then "bang[ed] on the door" and came into the room at 3 A.M. to get more beer. The plaintiff testified that she could not sleep that night "because [she] was too afraid that he was going to come back in."
The plaintiff asserted at the hearing that in April, 2017, when she was afraid that the defendant was drunk, she videotaped him and he "pushed her back."[3] Then, in May or June, 2017, the defendant put "green stuff" all over her sneakers, and in July (the month he filed for divorce) he put grass clippings in her garden shoes. On Labor Day, 2017, the defendant was "blaring" music and drinking, and the plaintiff called the police, in fear for her safety. She stated that the defendant was "verbally abusive ... very upset, very derogatory to the police officers" who came to the house.[4]
In September and November, 2017, the defendant opened the plaintiff's mail, and the plaintiff suspected him of "keying" her car (scratching it with a key) and making other marks on her car with his truck.[5] Although she took photographs of the damage, she did not confront him because she "was afraid of what he might do to [her]." The plaintiff noticed more key marks on her car in December, 2017, and asserted that the defendant was "continuing to destroy [her] personal belongings," so she purchased surveillance cameras to protect her property and because she "was afraid that he would come after [her] at some point." When the defendant found and removed these cameras,[6] the plaintiff was "afraid to go home." She left work late that night, was "relieved" to find the defendant was not home, and locked her bedroom door.
A hearing in the parties' divorce proceeding had been scheduled for the following day. As the plaintiff took a shower that morning, she locked the master bedroom and bathroom doors. The defendant was able to unlock the bedroom door,[7] prompting the plaintiff to remain in the bathroom because she "was afraid he might say or do something to [her] after finding the cameras."[8] After the hearing, the plaintiff went to the police station because she "was too afraid" to go home, and after consulting the police, she filed her complaint for a c. 209A order. Once she obtained the order, she returned to the station where, per police instruction, she waited to return home until officers "were able to retrieve [the defendant] from the house."
The judge was entitled to credit the plaintiff's testimony that she was "presently in fear that [the defendant] would cause [her] physical harm." Although she did not expressly testify that she feared such harm would be "serious," a plaintiff seeking a c. 209A order is not required to speculate to the judge about the precise manner or degree of harm the defendant may inflict upon her. The judge could properly find from the many steps the plaintiff took to protect herself -- including locking doors, calling the police to the house, avoiding going home, and making video recordings of the defendant's conduct -- that she feared serious physical harm.
The remaining question for the judge was whether the plaintiff's fear was reasonable. On that issue, a plaintiff need not wait for an actual incident of serious physical harm to occur before obtaining a c. 209A order. The defendant had physically pushed her, destroyed or damaged her property, unlocked doors that she had locked to keep him away, and removed the video cameras that she had installed as a deterrent to his harming her. The plaintiff testified that the frequency of the defendant's behaviors was escalating. The defendant's conduct went beyond causing the plaintiff to feel mere "[g]eneralized apprehension, nervousness, [or] feeling aggravated or hassled." Wooldridge v. Hickey, 45 Mass. App. Ct. 637, 639 (1998). The judge, who was able to evaluate both parties' demeanor, see Vittone v. Clairmont, 64 Mass. App. Ct. 479, 487 (2005), was entitled to find that the plaintiff's fear was reasonable, and that the risk of serious physical harm was imminent. Certainly we cannot say that his implicit finding on that point was clearly erroneous.
3. "Forum shopping." Finally, the defendant argues that the plaintiff improperly sought the c. 209A order in the District Court, as opposed to the Probate and Family Court where the divorce proceeding was already pending. The defendant has not explained, however, how this claimed forum shopping made the extension of the order erroneous or an abuse of discretion.
The defendant notes that the plaintiff failed to disclose the pending divorce proceeding on the first page of the complaint. The complaint form asks whether divorce or certain other proceedings between the parties are pending. Although the plaintiff did not check the "Yes" box, neither did she check the "No" box. In any event, the plaintiff referenced the divorce proceedings in her affidavit, and plaintiff's counsel referred to those proceedings at the outset of the extension hearing, so the judge was clearly aware of them. Contrary to the defendant's suggestion (made for the first time on appeal), the plaintiff's failure to check the box on the complaint form did not require the judge either to find an improper motive or to disbelieve any of the plaintiff's testimony.[9] Nor does the defendant cite any evidence to support his argument that the plaintiff received some unfair advantage by obtaining the c. 209A order while the divorce case was pending.
The District Court judge was entitled to hear the case, and there was no reason to refuse the plaintiff's request for protection from abuse simply because another judge in a separate court might already have been familiar with some aspects of the parties' relationship. The extension order was properly granted.
Order entered December 15, 2017, affirmed.

The defendant admitted to destroying the toiletries but said it was in retaliation for the plaintiff doing the same. He denied there being "any other inciden[t]s between [himself] and [the plaintiff] within the house." The judge was, of course, entitled to credit the plaintiff's version of events.

On appeal, the defendant argues that "pushed her back" means that the plaintiff originally pushed him and he retaliated. But at the hearing, he neither offered any evidence nor made any argument to that effect. The phrase could also be interpreted to mean that the defendant pushed the plaintiff away from him.

The defendant testified that since that incident, he drank at home only once and, instead, once or twice per week, would "stop and have a beer" before coming home.

The defendant denied causing the damage to the car.

The defendant testified that he gave the cameras to the police.

The defendant, who had been staying in the master bedroom while they were both in the house, testified that he went in to get his suit but then left and used a separate bathroom without speaking to the plaintiff.

Although the plaintiff had not spoken to the defendant "in a couple of months," she stated that he had been demanding that she pay his bills, threatening her if she did not do so, and making false allegations toward her.

At the extension hearing the defendant's counsel argued only that the matter "probably shouldn't have even come to this court, given the fact that there's an open divorce in the Worcester court that that judge has already been presiding over for six months." On appeal, the defendant properly disclaims any argument that a judge should sua sponte terminate a c. 209A order and transfer the case to another court merely because there is an open case there. See S.T. v. E.M., 80 Mass. App. Ct. 423, 430 (2011).