NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11905

ROLAND VAN LIEW vs. COLLEEN STANSFIELD.


        Middlesex.      January 8, 2016. - March 30, 2016.

    Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
                        Hines, JJ.


"Anti-SLAPP" Statute.  Practice, Civil, Motion to dismiss,
     Appeal, Review of interlocutory action.  District Court,
     Appellate Division.  Civil Harassment.



     Civil action commenced in the Lowell Division of the
District Court Department on February 22, 2012.

     A special motion to dismiss was heard by Laurence D.
Pierce, J.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Michael J. Fencer for the defendant.
     Karen A. Pickett for the plaintiff.


     BOTSFORD, J.  In this case we first consider a procedural

issue concerning the appropriate forum to hear appeals from the

allowance of a special motion to dismiss under G. L. c. 231,

§ 59H (§ 59H), the so-called "anti-SLAPP"[1] statute, by a judge in the District Court.  This case also requires us to evaluate the relationship between G. L. c. 258E, the statute governing civil harassment prevention orders, and allegedly political speech. On the procedural issue, we conclude that a party seeking to appeal from a District Court order allowing or denying a special motion to dismiss may file the appeal directly in the Appeals Court, rather than in the Appellate Division of the District Court Department (Appellate Division).  We further conclude that with one possible exception, the speech at issue here -- primarily concerning a local municipal election and more generally issues of local public concern -- did not qualify as either "fighting words" or "true threats," see O'Brien v. Borowski, 461 Mass. 415, 425 (2012), and therefore, no civil harassment prevention order should have issued in this case.  In the circumstances presented, Roland Van Liew established that Colleen Stansfield's petition for a civil harassment prevention order was devoid of factual support, that he had sustained injury, and that Stansfield's special motion to dismiss Van Liew's complaint for abuse of process and malicious prosecution should have been denied.

---

[1] "Anti-SLAPP" stands for anti-strategic lawsuit against public participation.  See Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 160 n.7 (1998).

Background.[2]  Van Liew and Stansfield are both residents of Chelmsford (town).  Stansfield has been an elected member of the local planning board since April, 2009.  At the time of the events at issue here, in 2012, Van Liew did not hold public office but was an active participant in local civic and political affairs.  Over the years, Van Liew has disagreed publicly with many positions taken by Stansfield on the planning board and in her role supporting local political campaigns.

In 2012, Van Liew was a candidate for selectman in the town, and on February 1, 2012, he held a public "meet and greet" event at the town library in connection with his candidacy.  Stansfield attended the event and challenged various positions taken by Van Liew during the discussion.  At the close of the event, Stansfield approached Van Liew and asked whether he was going to take part in upcoming debates.  According to Stansfield, Van Liew responded loudly, "[O]f course . . . and I know what you do. . . .  [Y]ou sent an anonymous letter to my wife and I'm coming after you," to which Stansfield responded, "[Y]ou are looking at a restraining order," and left.[3]

---

[2] The following background facts are taken from the pleadings of this case and the affidavits filed in support of and in opposition to the special motion to dismiss filed by Colleen Stansfield pursuant to G. L. c. 231, § 59H (§ 59H). Where facts are in dispute, it is noted in a footnote.

[3] As set out in his affidavit, Roland Van Liew contends he answered Stansfield's question without threatening her and told

Later that day, after speaking with local police, Stansfield sought in the District Court a harassment prevention order against Van Liew pursuant to G. L. c. 258E, § 3.  She alleged four incidents of harassment in her complaint:  (1) Van Liew threatened Stansfield at the meet and greet event, where he was "in [her] face" and told her he was "coming after" her and she left shaking in fear; (2) Van Liew sent several mailings in the past year calling Stansfield corrupt and a liar; (3) during a recall election in July, 2011, Van Liew again called her a liar and corrupt; and (4) during their first interaction in a two-hour telephone call initiated by Stansfield (that took place at some point prior to 2009) Van Liew screamed at her and called her "terrible names."  A District Court judge held an initial, ex parte hearing at which Stansfield testified; the judge issued a temporary harassment prevention order against Van Liew.[4]  The judge scheduled a full hearing on Stansfield's request for a permanent order to take place two weeks later, on February 15, 2012.  Five days after the temporary order issued, it was modified at Stansfield's request to prevent Van Liew from mentioning Stansfield's name in any "email, blog, [T]witter or

---

her, "I don't want any more anonymous letters sent to my wife," to which Stansfield responded, "You need a restraining order."

[4] The February 1, 2012, temporary order required Van Liew not to abuse, harass, or contact Stansfield and to stay away from Stansfield's residence.

any document through [I]nternet, television show, ad or otherwise."  On February 15, 2012, the scheduled hearing on Stansfield's request for an order took place before a different District Court judge.  It was attended by Stansfield, who represented herself, and Van Liew, represented by counsel. Stansfield testified about the verbal exchange at Van Liew's meet and greet event, and further testified that, in the past, Van Liew had called Stansfield "corrupt and a liar" with regard to her work on the planning board, specifically pointing to two electronic mail (e-mail) messages written by Van Liew, one of which Stansfield read to the judge.  The e-mail message appears to mention Stansfield twice by name but goes on at great length to provide highly critical commentary about certain development projects that were being proposed for the town pursuant to G. L. c. 40B and other programs.[5]  The judge concluded that she could not find the requisite three acts of harassment for a harassment prevention order under G. L. c. 258E and that some of the acts alleged by Stansfield were political speech, not threatening in

---

[5] Stansfield told the judge that in the second electronic mail (e-mail) message, which was sent after the temporary harassment prevention order had issued and had been modified to prohibit Van Liew from using Stansfield's name in any e-mail message, Van Liew did in fact mention her by name and called her a liar.  However, Stansfield did not read into the hearing record the text of the e-mail message in question and it is not included in the record before us.

any way; the judge vacated the temporary harassment prevention order.

Van Liew then filed the present action against Stansfield in the District Court, asserting claims for abuse of process and malicious prosecution. The complaint alleges that Stansfield sought the harassment prevention order against him "for the purpose of disrupting [Van Liew's] campaign" and that she sought the order even though she knew she lacked probable cause for its issuance. Stansfield answered and also filed a special motion to dismiss the complaint pursuant to § 59H along with a supporting affidavit. Van Liew filed an opposition to Stansfield's special motion to dismiss and a supporting affidavit. A third District Court judge allowed the special motion after a hearing, and ruled that Van Liew "failed to show that the application for a harassment prevention order 'was devoid of any reasonable factual support,'" quoting G. L. c. 231, § 59H. Van Liew then appealed the ruling to the Appellate Division, which concluded after a hearing that Van Liew had presented sufficient evidence to show that Stansfield lacked any reasonable factual support for her petitioning activity; the Appellate Division vacated the order of dismissal and remanded the case to the District Court for trial. Stansfield filed an appeal in the Appeals Court from the

decision and order of the Appellate Division; we transferred her appeal to this court on our own motion.

Discussion. 1. Stansfield's right to appeal. We first consider whether Stansfield may proceed with her appeal, given that the Appellate Division's order vacating the allowance of the special motion to dismiss and remanding the case for trial is interlocutory, and generally may not be the subject of an appeal. Van Liew argues that this court lacks jurisdiction because by statute, G. L. c. 231, § 109, only final decisions of the Appellate Division are appealable to the Appeals Court. We disagree.

This court previously has held that regardless of where -- i.e., in which department of the trial court -- a suit may be commenced, a trial judge's denial of a special motion to dismiss brought pursuant to the anti-SLAPP statute, § 59H,[6] may be

---

[6] Section § 59H provides in relevant part:

"In any case in which a party asserts that the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the [C]ommonwealth, said party may bring a special motion to dismiss. The court shall advance any such special motion so that it may be heard and determined as expeditiously as possible. The court shall grant such special motion, unless the party against whom such special motion is made shows that: (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and (2) the moving party's acts caused actual injury to the responding party. In making its determination, the court shall consider the pleadings

appealed directly to the Appeals Court.  See Fabre v. Walton,
436 Mass. 517, 521-522 (2002), S.C., 441 Mass. 9 (2004).  The
reasons for our holding, set out in Fabre,[7] apply with equal
force to an Appellate Division decision denying a special motion
to dismiss, and therefore to Stansfield's appeal.  But more
generally, and based on the same concerns that we expressed in
Fabre about certainty, uniform treatment of similarly situated
litigants, and consistent development of the law relating to the
anti-SLAPP statute, see id. at 522, we conclude that any party
in a case pending in the District Court who seeks to appeal from
the denial or the allowance of a § 59H special motion to dismiss

_____

and supporting and opposing affidavits stating the facts
upon which the liability or defense is based.

[7] Section 59H protects "individuals who exercise their right
to petition from harassing litigation and the costs and burdens
of defending against retaliatory lawsuits."  Fabre v. Walton,
436 Mass. 517, 520 (2002), S.C., 441 Mass. 9 (2004), citing
Duracraft Corp., 427 Mass. at 161-162.  As part of these
protections, the defendant in a SLAPP suit may file a "special
motion to dismiss" early in the litigation.  G. L. c. 231,
§ 59H.  In Fabre, supra at 521, we specifically recognized that
"the denial of a special motion to dismiss interferes with
[anti-SLAPP statute] rights in a way that cannot be remedied on
appeal from the final judgment," and notwithstanding the general
rules of appellate review, immediate appeal of an interlocutory
order denying a special motion to dismiss is necessary to
preserve the protected rights; to force a defendant to endure
litigation before allowing the appeal undermines the purpose of
the special motion to dismiss.  We further stated that "for
purposes of certainty, uniformity of treatment of litigants, and
the development of a consistent body of law, an interlocutory
appeal from the denial of a special motion to dismiss should
proceed to the Appeals Court, regardless of the court in which
the SLAPP suit was brought."  Id. at 522.  See Benoit v.
Frederickson, 454 Mass. 148, 151-152 (2009).

should file the appeal directly in the Appeals Court rather than in the Appellate Division of the District Court or the Appellate Division of the Boston Municipal Court. See Zullo v. Goguen, 423 Mass. 679, 681 (1996) ("This court has wide discretion in devising various procedures for the course of appeals in different classes of cases" [citation omitted]). In sum, Stansfield's appeal was filed properly in the Appeals Court, and like the Appeals Court, this court has jurisdiction to decide it.

2. Stansfield's special motion to dismiss. We turn to the merits. Stansfield, as the party filing a special motion to dismiss under § 59H, bore the initial burden to demonstrate through her pleadings and affidavits that Van Liew's claims she sought to dismiss were based on her "petitioning activities alone and ha[d] no substantial basis other than or in addition to the petitioning activities." Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 167-168 (1998). See G. L. c. 231, § 59H. There is no dispute that Stansfield met that burden; Van Liew's complaint focused solely on Stansfield's application for a harassment prevention order, which originally was granted ex parte as a temporary order. Van Liew makes no claim here, nor could he, that Stansfield's application for this order did not qualify as petitioning activity under the anti-SLAPP statute. Cf. McLarnon v. Jokisch, 431 Mass. 343, 347 (2000) (anti-SLAPP

statute covers filings for abuse protection orders, pursuant to G. L. c. 209A, and supporting affidavits).  As a consequence, Van Liew was required by the statute to show by a preponderance of the evidence -- again based on pleadings and affidavits -- that Stansfield's petitioning activities were "devoid of any reasonable factual support or any arguable basis in law" and that such petitioning activities "caused actual injury" to him. G. L. c. 231, § 59H.  See Benoit v. Frederickson, 454 Mass. 148, 152-153 (2009).  See also Baker v. Parsons, 434 Mass. 543, 553-554 (2001) (nonmoving party's obligation to show moving party's petitioning activities were devoid of either reasonable factual support or arguable legal basis is not "an insurmountable barrier to relief").  Stansfield argues that Van Liew failed to meet either prong of his burden.  We agree with the Appellate Division, however, that Van Liew met both prongs, and the special motion to dismiss should have been denied.

A party seeking a harassment prevention order under G. L. c. 258E, § 3,[8] must demonstrate "harassment," which the statute

---

[8] General Laws c. 258E, § 3, provides in relevant part:

"(a) A person suffering from harassment may file a complaint in the appropriate court requesting protection from such harassment.  A person may petition the court under this chapter for an order that the defendant:

"(i) refrain from abusing or harassing the plaintiff, whether the defendant is an adult or minor;

defines in relevant part to mean "[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property that does in fact cause fear, intimidation, abuse or damage to property." G. L. c. 258E, § 1.[9] The definition of "harassment" in c. 258E was crafted by the Legislature to "exclude constitutionally protected speech," O'Brien, 461 Mass. at 425, and to limit the categories of constitutionally unprotected speech that may qualify as "harassment" to two: "fighting words" and "true threats." Id. See Seney v. Morhy, 467 Mass. 58, 63 (2014). To qualify as "fighting words" the words "must be a direct personal insult addressed to a person, and they must be inherently likely to provoke violence." O'Brien, supra at 423. As for "true threats," these include "direct threats of imminent physical harm," as well as "words or actions that -- taking into account the context in which they arise -- cause the victim to fear such [imminent physical] harm now or in the future." Id. at 425.

---

"(ii) refrain from contacting the plaintiff, unless authorized by the court, whether the defendant is an adult or minor; [and]

"(iii) remain away from the plaintiff's household or workplace, whether the defendant is an adult or minor . . . ."

[9] The word "malicious" is also defined in G. L. c. 258E, § 1, and means "characterized by cruelty, hostility or revenge."

Moreover, to constitute "harassment" within the definition of the term in c. 258E, the fighting words or true threats must have been made with an intention to cause, and must actually cause, abuse, fear, intimidation, or damage to property.[10]  G. L. c. 258E, § 1.  And fear is narrowly defined as fear of physical harm or fear of physical damage to property; it must be more than "a fear of economic loss, of unfavorable publicity, or of defeat at the ballot box."  O'Brien, supra at 427.

In her request for the harassment prevention order, Stansfield pointed to the following conduct on Van Liew's part that, she claims in this appeal, compelled her to seek the harassment prevention order against him:  during a telephone call, Van Liew called her uneducated and stupid; in public mailings, Van Liew stated that Stansfield was corrupt and a liar, and further referred to her as corrupt and a liar during a local recall election; and Van Liew threatened her at the meet

---

[10] To obtain a harassment prevention order, a plaintiff must show that the defendant intended to cause "fear, intimidation, abuse, or damage to property" with respect to each of the three claimed acts of harassment.  O'Brien v. Borowski, 461 Mass. 415, 426 n.8 (2012).  In determining whether the acts did in fact cause "fear, intimidation, abuse, or damage to property," however, the fact finder "must look to the cumulative pattern of harassment, and need not find that each act in fact caused fear, intimidation, abuse, or damage to property."  Id.

and greet event held in support of his candidacy for the office of selectman.[11]

We will assume that the most recent incident alleged by Stansfield, occurring at the meet and greet event, qualified as an act of harassment under G. L. c. 285E, § 1; that is, we will assume that Van Liew's declaration to Stansfield, "I'm coming after you," was an "act[] of willful and malicious conduct," and further that it was aimed at Stansfield, was committed with the requisite intent, and caused Stansfield fear. However, the other three instances complained of by Stansfield -- accusations made in public mailings, accusations made during the 2011 recall election, and insults made during a telephone call that took place before 2009 -- did not qualify as harassing acts within the scope of G. L. c. 258E.

The public accusations by Van Liew that Stansfield was "corrupt and a liar" -- the subject of two of the four incidents of harassment -- plainly were remarks about Stansfield's performance as an elected planning board member, i.e., as a public official. See Arlington v. Board of Conciliation & Arbitration, 370 Mass. 769, 777 (1976). These remarks about a local public official constituted political speech and were at

---

[11] According to the police report regarding the meet and greet encounter -- submitted to the District Court by Van Liew in support of his opposition to the special motion to dismiss -- Stansfield stated that she attended the political event to "rattle Van Liew's cage."

the core of the speech that the First Amendment to the United States Constitution protects.  See McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 346 (1995) ("Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution.  The First Amendment affords the broadest protection to such political expression in order 'to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people'" [citation omitted]).  Although these types of public accusations may be "vehement, caustic, and sometimes unpleasantly sharp," New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964), this form of political speech must remain "uninhibited, robust, and wide-open," id.  Van Liew's challenged accusations were neither fighting words nor true threats, but at most qualify as political hyperbole.  See Commonwealth v. Chou, 433 Mass. 229, 236 (2001) ("The term 'true threat' has been adopted to help distinguish between words that literally threaten but have an expressive purpose such as political hyperbole, and words that are intended to place the target of the threat in fear").

The remaining act of which Stansfield complained occurred when she telephoned Van Liew to become acquainted with him and his views about issues of concern in the town, and Van Liew spoke "very loudly . . . telling [her she] was wrong, uneducated

or stupid." The record indicates that at the time of this telephone call, Stansfield was not yet a planning board member and therefore not a public official, but the discussion involved matters of public interest. Regardless of whether the discourse was political in nature, however, Van Liew's insults certainly failed to qualify as fighting words or true threats. The insults were not "so personally abusive that they [were] plainly likely to provoke a violent reaction and cause a breach of the peace," O'Brien, 461 Mass. at 423, nor did such insults, even if delivered in a loud voice, rise to the level of a "true threat" of "imminent physical harm" or words that would cause someone to fear such harm. Id. at 425. As such, these telephone conversation insults do not qualify as harassing conduct within the scope of G. L. c. 258E. Accordingly, because Stansfield failed to present three or more acts of harassment, she was not entitled to a harassment prevention order. See Seney, 467 Mass. at 63-64 (evidence was insufficient to establish three acts of harassment under c. 258E where plaintiff failed to show defendant intended to cause fear or intimidation; e-mail message addressed to third party using unflattering terms to describe plaintiff was not directed at plaintiff and was not motivated by cruelty, hostility, or revenge). As a result, and as Van Liew showed below in accordance with his burden to do so, Stansfield's petitioning activity -- seeking a harassment

prevention order -- was "devoid of any reasonable factual support or any arguable basis in law." G. L. c. 231, § 59H. See Benoit, 454 Mass. at 154 n.7.

Stansfield contends that the original issuance of a temporary harassment prevention order and its subsequent modification is proof that a reasonable person may conclude there was sufficient factual support for the petitioning activity. The argument fails. Although a judge granted the request for a harassment prevention order after a brief ex parte hearing and the order was modified thereafter to increase its restrictions on Van Liew,[12] that order was only temporary. Two weeks later, after a full hearing that presented Van Liew with his first opportunity to be heard, the temporary order was vacated. Contrast Fabre, 436 Mass. at 524 (where judge extended restraining order for six months after evidentiary hearing and final judgment entered, "the judgment is conclusive evidence that the petitioning activity was not devoid of any reasonable factual support or arguable basis in law"). It was clear from the text of Stansfield's complaint for a harassment prevention order that no valid basis for such an order was presented; the insufficiency of facts pleaded could not be cured by a temporary order that was entered erroneously.

---

[12] The record does not indicate whether the modification of the temporary order involved any type of hearing before a judge.

Finally, Van Liew adequately demonstrated that Stansfield's petitioning activity caused him "actual injury," the second prong of the showing he was required to make to defeat Stansfield's special motion to dismiss. To defend against the harassment protection order sought by Stansfield, Van Liew retained an attorney to represent him at the full hearing before the District Court judge and submitted supporting evidence of the attorney's fees and costs he was responsible for paying as a result.[13,14] The costs of defending against improper petitioning activity, once affirmatively proved, are evidence of reasonable damages. Cf. Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 645-647 (2010). We accordingly conclude that Van Liew met his burden as the nonmoving party and the Appellate

---

[13] Stansfield argues that the attorney's bill for his services was sent to a corporate nonparty, Hands on Technology Transfer, Inc., and not to Van Liew, and therefore does not evidence damages suffered by Van Liew himself. The attorney's bill, however, was addressed to "Mr. Roland Van Liew" at the corporate address, and based on this record, we decline to infer that Van Liew did not bear responsibility to pay for his attorney's services.

[14] Van Liew further alleged reputational harm caused by Stansfield's petitioning activity. Because we conclude that Van Liew's evidence of legal expenses was sufficient to meet his burden under § 59H to show damages, we do not consider his allegations of reputational harm.

Division correctly denied Stansfield's special motion to dismiss.[15]

Conclusion.  We vacate the order of the District Court and remand the case to that court for further proceedings consistent with this opinion.

So ordered.

---

[15] Stansfield argues also that the allegations made by Van Liew in his complaint -- that Stansfield sought the harassment prevention order out of malice and with intent to disrupt his campaign -- are unfounded accusations.  The argument is not relevant to our analysis of the issues before us, and we do not reach it.